### LEWIS v. COUNCIL.

(District Court, E. D. North Carolina, at Wilmington. July 6, 1923.)

No. 86.

1. **Principal and surety ☞66(1)—Surety's liability held measured by bond executed.**

Where defendant reorganized a corporation and agreed to become surety on bond to cover goods of plaintiff to be handled by the corporation, *held*, defendant's liability under his agreement was to be measured by a bond executed by him, and that he was not required to execute additional bonds or be liable under his contract for the value of goods in excess of the amount of the bond.

2. **Bankruptcy ☞145(1)—Creditor not entitled to recover for losses sustained by reason of corporate officer's failure to discharge duty owed to corporation.**

A creditor is not entitled to maintain a bill to recover for losses alleged to have been sustained by him, by reason, or on account of, defendant corporate officer's failure to discharge duties which he owed to the corporation, and which, upon the adjudication in bankruptcy of the corporation and the appointment and qualification of a trustee, vested in the trustee in view of Bankruptcy Act, § 70 (Comp. St. § 9654).

3. **Corporations ☞361—Evidence held not to show any knowledge by president of corporation of misapplication of moneys.**

In an action by a creditor against a corporation's president, evidence *held* insufficient to show any actual misappropriation by defendant or knowledge of misappropriation of its funds, assuming that a fiduciary relation existed between plaintiff and defendant due to a reorganization of an old insolvent corporation.

4. **Corporations ☞310(1)—Liability of officer for losses not lightly imposed in absence of positive misfeasance.**

Treated as a cause of action in favor of the corporation, liability of a corporate officer for losses should not be lightly imposed, in the absence of any element of positive misfeasance, and solely on the ground of passive negligence, and it must be made to appear that the losses were the natural and necessary consequences of omission on the part of a corporate officer.

In Equity. Suit by Andrew Jackson Lewis against John P. Council. Decree for plaintiff.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Rountree & Carr, of Wilmington, N. C., McIntosh & Thrift, of Baltimore, Md., and Mann & Tyler, of Norfolk, Va., for plaintiff.

Harry K. Wolcott, of Norfolk, Va., and E. K. Bryan, of Wilmington, N. C., for defendant.

CONNOR, District Judge. The pleadings, exhibits, and evidence disclose the following facts:

Plaintiff, for several years prior to 1913, was engaged in business at Walnut Point, Northumberland county, Va., selling, through consignment contracts, and otherwise, products of land and sea.

He had, prior to said date, been shipping a large part of his output to the Holland-Council Company of Norfolk, Va., to be sold by said company, as his agent, on commission. By the terms of the consignment contract, the goods shipped by plaintiff were to be kept separate from other goods and merchandize held or owned by said company.

The Holland-Council Company was a corporation of which defendant, J. P. Council, was president, and his son, J. R. Council, was secretary and treasurer. During the year 1913, the company became financially involved and was adjudged bankrupt. Plaintiff ascertained that his goods and the proceeds of such of them as had been sold, in violation of the consignment contract, had been commingled with other goods of said company and the proceeds of such as had been sold, resulting in a heavy loss to him. Defendant, J. P. Council, made an arrangement with the creditors of the company and the officers of the bankruptcy court, whereby he took over the remaining assets of said company and caused them to be transferred to a corporation, which he caused to be chartered and organized under the laws of Virginia, called J. R. Council & Co., Incorporated. Defendant entered into an agreement with plaintiff and other creditors of said company, whereby he agreed to pay the amount due them by said bankrupt company, in cash, and annual installments.

The terms and provisions of said agreement so far as they are relevant to the decision of this cause, are set forth in Exhibit A attached to plaintiff's bill. The contract recites the organization of J. R. Council & Co., Incorporated, "for the purpose of conducting a brokerage and distribution business, dealing principally in groceries," with a maximum capital of $50,000 preferred and the same amount of common stock, and reciting:

"That the said Andrew J. Lewis desires to sell to J. P. Council, his claim against the said bankrupt estate of Holland-Council Co., Incorporated, and desires to have the said J. R. Council & Company, Incorporated, market his merchandize products in the district formerly covered by said Holland-Council Company, Incorporated."

"That the said Andrew J. Lewis agrees to market his merchandize products throughout the territory named, exclusively, so long as the said J. R. Council & Company, Incorporated, shall market said products with reasonable business success and account therefor accurately and promptly, in accordance with the agreement of even date with said contract, between J. R. Council & Company, Incorporated, and Andrew J. Lewis. The faithful performance of said agreement and the prompt accounting and payment to the said Andrew J. Lewis for all goods shipped pursuant thereto, is to be secured by the execution and delivery of a good and sufficient bond by the said J. R. Council & Company, Incorporated, as principal and the said J.

P. Council, as surety, in the penalty of at least double the value of all goods·shipped on the order of said J. R. Council & Company, Incorporated, at any one time, which bond the said J. P. Council agrees to cause the said J. R. Council & Company, Incorporated, to execute as principal, and to execute himself as surety, and to immediately deliver the said bond to the said Andrew J. Lewis; provided, however, that the said J. P. Council shall not, under the terms of the said contract, or of the said bond, be in any way rendered, or held liable for the proceeds of any goods sold by the said J. R. Council & Company, Incorporated, which shall not have been collected by the said J. R. Council & Company, Incorporated."

This agreement (Exhibit A) was executed by J. P. Council and Andrew J. Lewis, June 27, 1913.

On the same day, Andrew J. Lewis and J. R. Council & Co., Incorporated, executed an agreement reciting that—

"Whereas the said Lewis, principal, was about to turn over to said J. R. Council & Co., Incorporated, agent, certain goods, wares and merchandize this day acquired by him from the receiver, of the said Holland-Council Company, Incorporated, bankrupt, a list of which is hereto attached, and has intrusted the same to the care of the said agent, and will from time to time hereafter in the manner herein provided, intrust to the said agent to sell and dispose of certain other goods, wares and merchandize."

J. R. Council & Co., Incorporated, thereupon agreed with Lewis, principal, to sell and dispose of all such merchandise as the said Lewis shall consign to it, to the best advantage and for the most money it can obtain therefor, at not less than the prices fixed for the same by Lewis, and that it will forthwith, and within 10 days from any such sale, remit the proceeds of such sale to the said Lewis, or such person as he may direct, together with the proper account of sales therefor, subject to the deductions named.

J. R. Council & Co., Incorporated, agrees that it will render to Lewis, principal, just and proper accounts of all goods which may have been consigned to it by said Lewis and which remain unsold on the last day of any month, and that it will keep true and proper accounts in proper books which shall be accessible to said Lewis and open to his inspection or of his duly authorized agents, and to remit to said Lewis, within the time specified, for all goods, etc., so consigned, regardless of whether said agent shall collect or be able to collect therefor from the persons to whom it has sold such goods, etc., "it being the intention of this clause of the agreement to make said agent responsible to the principal for the payment of said goods," and further agrees that it will keep all goods consigned by Lewis separate and apart from other goods handled by it, and "that it will give to the said principal a bond in the penalty of at least double the value of all goods so consigned to it by said principal which may be in its possession at one time for which the proceeds have not been properly remitted to the principal in the manner above provided, with J. P. Council as surety, conditioned for the faithful performance of this agreement and the prompt accounting for and payment to the said principal, for all such goods and the proceeds thereof, as may be consigned to the said agent by the said principal, provided, however, the said surety shall not be held liable hereunder or under said bond for the proceeds of any goods sold by said agent which shall not have been collected by the said agent." Exhibit A.

Pursuant to the provisions of the two agreements (Exhibits A and B), J. R. Council & Co., Incorporated, on June 27, 1913, executed, with defendant J. P. Council as surety, a bond payable to plaintiff in the sum of $30,000. The condition of said bond is such that—

"Whereas the said J. R. Council & Co., Incorporated, has, by an agreement of even date herewith, entered into a certain contract with the said Andrew J. Lewis, for the sale, on consignment, of certain goods, wares and merchandize, in said contract set forth, which said contract is hereto attached as a part of this bond, as fully as if the same were herein set forth at length.

"Now, therefore, if the said J. R. Council & Co., Incorporated, shall well and truly, perform all of its agreements in the said contract set forth and contained, this obligation shall be null and void, otherwise to remain in full force and virtue; it being understood and agreed however that the said J. P. Council, as surety, shall not be held liable under said contract, or to any other person, for the proceeds of any goods sold by the said J. R. Council & Co., Incorporated, which have not been collected by the said J. R. Council & Co., Incorporated."

Plaintiff alleges that—

"Your orator at that time having turned over to the said J. R. Council & Co., Incorporated, goods of the value of $15,000, a bond in the penalty of $30,000 with the said John P. Council, as surety, was then given to your orator as a further assurance that said contract would be faithfully complied with. That he has continuously since that time shipped to the said J. R. Council & Co., Incorporaed, goods, etc., upon consignment in accordance with the terms and provisions of said contracts. That prior to March, 1920, he continued to ship goods to J. R. Council & Co., Incorporated. That not having received any account of sales or remittances for such goods, such as were received being in the form of trade acceptances, payment of which were refused at maturity, he, with his attorney, went to Norfolk in October, 1920, to make an examination of his account. He found that the contract with said J. R. Council & Co., Incorporated, had been violated in every particular; that his goods had been intermingled with other goods and accounts of said company, so that complete identification thereof was impossible; that the proceeds of his goods had been misappropriated and converted to the use of the said company, its officers and shareholders; that the books and accounts had been so kept as not to reflect the true condition of the affairs of the said company and in no degree to show the true condition of plaintiff's accounts. Plaintiff was informd by J. R. Council & Co., and from such records as the company had kept, it had apparently sold and collected the proceeds from about $45,000 worth of plaintiff's goods and had on hand at the time about $15,000 of his goods unsold. Plaintiff, knowing said account was erroneous, had an audit made of the books of the company by a certified public accountant. From a partial audit made October 25, 1920, and from admissions of J. R. Council, secretary and manager of said company, it was ascertained that on October 22, 1920, the company should have had on hand $49,079.94 of the proceeds of plaintiff's goods consigned to said company, under the terms of the contracts."

From further examination and auditing the company's books and other sources of information due the plaintiff, the amount was increased to $79,986.74.

The result of the audit of the company's books showed that it was hopelessly insolvent.

On the coming in of the report, involuntary proceedings were instituted, by other creditors, and the said company was, on the ———— day of November, 1920, duly adjudged bankrupt. A trustee was elect-

ed, and the estate of said J. R. Council & Co., bankrupt, is now being administered by the bankruptcy court.

Defendant, John P. Council, was at all times after the organization of said company president, and J. R. Council was secretary and treasurer. Defendant, J. R. Council, and one other person who held one share, constituted the board of directors.

The by-laws provided that—

"Stated meetings of the directors may be held without notice on the scond Monday in each month at 12 m. at the office of the company in the city of Norfolk, Va., and that a majority of the directors in office shall constitute a quorum. The special meetings of the board may be called by the president on one day's notice, by mail or personal.

"The directors may hold their meetings and have the office and keep the books of the company at such place or places as they, from time to time, may determine."

Regular annual meetings of the stockholders were held until the year 1919. The last meeting of the directors was held February 25, 1919. Defendant, J. P. Council, did not attend the meetings of the directors.

Plaintiff alleges that defendant, John P. Council, notwithstanding the duty imposed upon him as president and director of said company, negligently permitted the affairs of the company to be operated in utter disregard of business principles, and has permitted plaintiff's goods and the proceeds of such goods as were sold to be commingled with the goods and assets of said company; that he either knew, or should have known, but for his gross negligence, of such intermingling of plaintiff's goods, in violation of the consignment contract.

The allegations respecting the negligence of defendant, J. P. Council, in the failure to discharge his duty, as president and director of said company, are full, explicit, and sufficiently positive and comprehensive for fixing liability upon him as such officer.

It is further alleged:

"That by reason of these failures of duty on the part of said John P. Council, which resulted in the breach of trust by the defendant corporation, loss was caused to your orator, by reason of such breach of trust, in a large sum of money amounting in the aggregate to approximately $100,000 with interest from October, 1920."

It is impracticable to set forth, in detail, the varying forms in which substantially the same matters are alleged in the bill. The iteration and reiteration of averments of the wrongdoings of the company and the omissions of duty by defendant as president and director tend to obscure the grounds upon which plaintiff seeks to fix liability upon him.

The prayer for relief is:

"(1) That, if necessary, this cause be referred to a master to ascertain the value of the goods consigned by plaintiff to J. R. Council & Co., Incorporated, the proceeds of which were sold and collected and not accounted for to plaintiff.

"That the amount of liability of said John P. Council, by reason of his negligent failure, as an officer and director of the said company, to see that the said contract of June 27, 1913, filed as Exhibit B above was complied with, be ascertained and fixed.

"(2) That the court will enforce specifically the said contract filed as Exhibit A, and that the same be treated as a bond, or will treat that as done which ought to have been done, and decree against John P. Council for the amount which plaintiff has lost by reason of the failure of the said J. R. Council & Co., Incorporated, to faithfully perform its said contract with plaintiff.

"For such other and further relief as the nature of the case may require, and to equity may seem meet and proper."

In respect to the prayer for a reference, it is sufficient to say that, upon the hearing, plaintiff introduced two auditors, who made several audits of the books of J. R. Council & Co., Incorporated, and the report of such audits.

Joseph Robinson, who made the first audit, testifies that he discussed the account with J. R. Council, who said the account shown in the record was correct; that it showed the amount due plaintiff to be $37,734.69. This audit was made October 8, 1920; the account was made up to October 25th.

That a subsequent audit shows final figures of $70,486.42 in addition to which the J. R. Council & Co., Incorporated, is liable to A. J. Lewis as a trade creditor on notes payable as follows: Date of note August 9, 1920, maturity September 28, 1920, $2,500. Robinson testified that by adding the trade notes $3,073.72 due from accounts due from the proceeds of Capt. Lewis goods, which had not been collected, makes a total of $78,550.14. J. B. Redord also made, or assisted in making, the audit of J. R. Council & Co.'s books. He substantially corroborates Robinson.

Passing, for the present, the question of the amount due plaintiff by J. R. Council & Co., Incorporated, and proceeding to ascertain the character and extent of defendant J. P. Council's liability, while not very clearly stated in the bill, light is cast upon plaintiff's claims against him by reference to his allegation, and prayer for relief. He bases his cause of action:

(1) Upon the personal liability of defendant, J. P. Council, on the bond executed by the company and with defendant as surety, pursuant to the terms of the contract executed by him June 27, 1913, and the bond in the penal sum of $30,000.

(2) That defendant, J. P. Council, agreed in said contract to execute as surety "a good and sufficient bond in the penalty of at least double the value of all goods shipped on the order of said J. R. Council & Co., Incorporated, at any one time."

It will be observed that defendant, J. P. Council, and plaintiff A. J. Lewis, are the only persons who are parties to, or who executed, this contract (Exhibit A), and this is the only contract, other than the bond, executed simultaneously with the contract, executed by defendant, J. P. Council, as surety. His personal contractual liability to plaintiff is measured and limited by the terms and provisions of this contract and bond.

[1] To the contention made by plaintiff that, by his contract (Exhibit A), defendant obligated himself to sign other bonds, either of his own motion or upon the demand of plaintiff, it would seem to be sufficient to say that there is not found, in the contract, any reference to other bonds than the one "then given to your orator as a further as-

surance that said contract would be faithfully complied with." During the seven years intervening between the execution of the contract and bond, plaintiff continued to ship, under the provisions of the contract (Exhibit B) made simultaneously with Exhibit A, goods to J. R. Council & Co., Incorporated. While the transactions, under the contract, were numerous and of large amount, no suggestion was made that defendant execute any other or further bond or bonds. The amount of the bond was fixed at $30,000, being double the value of the goods then consigned to J. R. Council & Co., Incorporated. The condition of the bond secures "the performance of all of the agreements of J. R. Council & Co. in said contract" (Exhibit B). Reference to the contracts (Exhibits A and B) aids in the construction to be given to the condition of the bond. When defendant executed, and plaintiff accepted, the bond as compliance with the obligation assumed by him, and the obligations assumed by J. R. Council & Co., Incorporated, his liability, in that respect, was complied with, and by the terms of such bond and the condition thereof plaintiff's claim and defendant's liability must be measured.

Passing the question whether if, as contended by plaintiff, defendant was obligated to execute, from time to time, and as plaintiff should demand, other bonds, such obligation could be specifically enforced on the well-known maxim relied upon, I am of the opinion that no such obligation was assumed by defendant. The liability of defendant on the bond, in the light of the evidence, will be dealt with later.

The next ground of plaintiff's prayer for relief is based upon the allegation, and the evidence, that defendant negligently failed to discharge the duty imposed upon him by law, to give proper care and attention to the conduct of the business of J. R. Council & Co., Incorporated, as its president and one of its directors, and that, by reason of such negligent failure, the plaintiff sustained loss to the full amount of the value of the goods shipped to the company and sold by it which have not been accounted for and paid to him.

The evidence, bearing upon that allegation, is largely furnished by defendant, who frankly and with transparent truthfulness describes his relation to the company and his conduct in regard to its management and operations. In view of the character of the allegations made by plaintiff, and to correctly interpret defendant's conduct in respect to it, a statement of his testimony is necessary. Defendant is about 66 years of age; resides in Columbus county, N. C., near the South Carolina line; is engaged in the manufacture of tools used in making turpentine and in farming. His residence is, and was, prior to the organization of the Holland-Council Company, several hundred miles from Norfolk. Upon the failure of the Holland-Council Company, 1913, of which he testifies that he was a large creditor, in the sum of $39,000 for money loaned and indorsements on notes, several of the large creditors, whose names he gives, went to his place of business in North Carolina, and persuaded him to go to Norfolk. When he reached Norfolk, he found other creditors, among them, plaintiff, all apparently anxious for the new company to be organized. J. R. Council wished to continue business. Defendant agreed to put up $10,000, negotiating with other creditors for purchase of their claims and get-

ting the charter. The terms upon which he purchased the claims are not material. He says:

"But, before I signed any papers, or agreed to form this new corporation, I notified Mr. Hamilton (representing the Washington Milling Company, one of the large creditors who seemed to be spokesman for the whole bunch), in the presence of the other gentlemen, that I could not give the business my personal attention and suggested that they all take some stock. Mr. Hamilton said that they had an interest in the dividends of the common stock (the dividends upon which were to be divided between the defendant and creditors of Holland-Council Company, in part payment for their claims), and they could, of course, examine into the books and see that they were getting a square deal, and if I could not give my personal attention to the business they would all make frequent visits in connection with the sale of their products and would look into the business and keep it straight."

He says that he was not able to say whether plaintiff heard this statement. "Plaintiff's lawyers drew up the papers. That is about all I know or remember about the formation of the corporation. Mr. Parker was bookkeeper up to about 1916. He made me a weekly statement of every transaction showing to whom the goods were sold and delivered and whether the deal showed a loss or profit, usually once a month—but thinks weekly. At the end of the year they usually tallied, not always, but approximately correct. For the first three years, up to 1918, the business made money from the financial statements. I did not examine the books; did not go to Norfolk often; tried to get a statement from son; didn't get it; said it was hard to get any one to make it up; had "flu"; got it in March. Along in April (1918) ceased to make effort to get a statement. Simply let it go. Everything was in chaos, and it was difficult to get adequate help for any purpose. When the company got in trouble in October, 1920, it looked to me like the whole country was going on the rocks in spite of the devil, but would have gone up there and tried to have straightened out this (business), but I did not see any use in wasting money when it looked like everything—bankers and business men and exerybody, except lawyers—and it looked like they would be in for a good time. As for attending to the business up there, I did not do it and never intended to do it. I expected, when the business was organized and got going, to sell out the stock I had and let it alone. I do not know whether the plaintiff knew that I was not looking after the business; he ought to have known it."

Defendant is asked whether he signed the by-laws, and said that he did not remember when they were signed. He thinks that they were sent to him, but he was not sure; was signing so many papers—some he did not know he signed, as it turned out afterwards.

He is shown the minute books and says that he signed same. He says:

"When I got the first tentative report listed here, I saw there was listed against the officers $37,000, and I immediately wrote to my son and asked him what that meant. That is the first knowledge I had of it."

Says he wrote letter to plaintiff October 9, 1920 (Plaintiff's Exhibit 9).

The foregoing is substantially the evidence bearing on the allegations of defendant's negligence in failing to discharge the duty imposed upon him by the law, as president and director of the company. Objection was made by plaintiff to the statement made by defendant as to his relation to the corporation at the time the company was organized. It was not received nor considered for the purpose of limiting or changing the measure of his liability as president and director, but to show the circumstances and conditions under which he accepted the

position and respecting charges of bad faith or knowledge of the conduct of his son, the secretary and manager of the business.

The contention of defendant must be disposed of before proceeding further with the discussion of the measure of defendant's obligation as president and director, that the right to sue for such negligence is vested in and should be prosecuted by the trustee in bankruptcy. J. R. Council & Co., Incorporated, was adjudged bankrupt November ——, 1920, and R. B. Spindle, trustee, appointed and qualified. This bill was brought July 18, 1921.

In his amended answer defendant alleges the bankruptcy of J. R. Council & Co., Incorporated, and the election and qualification of a trustee, all of which is shown by the introduction of the record in the suit brought by Spindle, trustee of J. R. Council & Co., bankrupt, against defendant and now pending in this court, in which the plaintiff trustee seeks to recover of defendant as president and director losses alleged to have been sustained by J. R. Council & Co. Incorporated, by reason of the negligent failure of defendant to discharge his duties as president and director. He insists that this alleged cause of action accrued to the corporation and, upon its adjudication, vested in the trustee, and that he alone can sue for such loss as was sustained by the corporation.

By section 70, Bankruptcy Act (Comp. St. § 9654), the trustee of a bankrupt, either personal or corporate, is "vested by operation of law with the title of the bankrupt, as of the date he (or it) was adjudged * * * to all * * * rights of action arising upon contracts * * * or injury to, his (or its) property."

In Trustee, etc., v. Bosseiux, 3 Fed. 817, District Judge Hughes (E. D. Va.) held that the trustee in bankruptcy was vested with the right to bring suit in equity against the directors of a bank in bankruptcy to recover losses incurred by the gross negligence of such directors, citing, and quoting the language of Justice Miller in, Sawyer v. Hoag, 17 Wall. 619, 21 L. Ed. 731:

"The assignee (trustee) is the representative of the creditors as well as the bankrupt. He is appointed by the creditors."

Noting that the trustee was not authorized to bring action for torts which had accrued to the bankrupt, Judge Hughes says:

"But the present suit is not an action at law in tort for damages either in form or theory. It is a proceeding in equity, in which complainant set out how the property and capital of the bankrupt was squandered in numerous instances; charge the defendants with responsibility for the losses described and demand not damages, either in name or nature, but restitution of funds lost through imbecile inattention and reckless negligence."

The basis upon which suits by trustees in bankruptcy or receivers of insolvent corporations are sustained is that the assets of such bankrupts or insolvent corporations are trust funds to be administered by the court for the benefit of all of the creditors and stockholders. This includes rights of action for the recovery of such assets as may have been lost, misapplied, or wasted by the officers of corporations.

Porter v. Sabin, 149 U. S. 473, 13 Sup. Ct. 1008, 37 L. Ed. 815, was a suit in equity by stockholders of an insolvent corporation against the directors, in which they were charged with fraudulently and neg-

ligently wasting the property of the corporation. In a suit by its creditors, the court appointed a receiver. Mr. Justice Gray said:

"The suit, when brought by stockholders, is still a suit to enforce a right of the corporation, and to recover a sum of money due to the corporation, and the corporation is a necessary party in order that it may be bound by the judgment. * * * If the corporation becomes insolvent, and a receiver of all its estate and effects is appointed by a court of competent jurisdiction, the right to enforce this, and all other rights of property of the corporation vests in the receiver, and he is the proper party to bring suit and, if he does not himself sue, should properly be made a defendant to any suit by the stockholders in the right of the corporation."

The bill was dismissed.

In Kelly v. Dolan (C. C. A. 3d Cir.) 233 Fed. 635, 147 C. C. A. 443, it was held that when a corporation is injured through the negligence of its directors, the right to recover for such negligence is vested in the corporation. It appearing that a receiver had been appointed of the property of the insolvent corporation, the bill brought by the stockholders was dismissed.

In Klein v. Peter (C. C. A. 8th Cir.) 284 Fed. 797, Kenyon, Circuit Judge, said:

"The property of the corporation, which would include claims of action on behalf of the corporation is in possession and custody of the court, held by the receiver as an officer of the court, * * * the right of action by the receiver * * * is exclusive." Klein v. Peter (C. C. A. 9th Cir.) 286 Fed. 362.

In Coble v. Beall, 130 N. C. 533, 41 S. E. 793, the action was brought by a stockholder of an insolvent bank against the directors alleging fraudulent, careless, and negligent management of its affairs, by reason of which a pecuniary loss was sustained in the deterioration in value of its shares of stock. Defendants demurred to the bill for that the suit should have been brought by the corporation, or its receiver. The court dismissed the bill, citing Pomeroy's Eq. § 1905, that—

"Wherever the cause of action exists primarily in behalf of the corporation against the directors, officers and others for wrongful dealing with the corporate property, or wrongful exercise of corporate franchise, so that the remedy should regularly be obtained through a suit in the name of the corporation, and the corporation either actually or virtually refuses to institute or prosecute such suit, then, in order to prevent failure of justice, an action may be brought and maintained by a stockholder, or stockholders, either individually or suing on behalf of themselves and all others."

The reason why the stockholders cannot maintain such suit against the directors is that the duties, the breach of which constitute the ground of action, are duties owing to the corporation, considered as a legal entity, and not to any particular stockholder. 4 Thomp. Corp. 4476. The same reason applies to suits by a creditor. If one or more creditors may, by bringing suits against the directors, upon a cause of action, accruing to the corporation, prior to its adjudication in bankruptcy, by reason of negligent conduct in the discharge of their duties, whereby the assets of the corporation were either lost or diminished, and by securing judgments, appropriate to themselves the value of the property lost or wasted, the purpose of the Bankruptcy Act, to secure a distribution of the property of the bankrupt corporation

among its creditors, will be defeated. The same is true if the property of the insolvent corporation is being administered by a court of equity through a receiver. To prevent this result the court will enjoin suits by creditors and compel them either to file their claims with the trustee or make them parties to the pending suit in equity. Hancock v. Wooten, 107 N. C. 9, 12 S. E. 199, 11 L. R. A. 466, in which Shepherd, J., says:

"In such cases there are many parties standing in the same situation as to their rights or claims upon a particular estate or fund, and the shares of a party cannot be determined until the rights of all the others are settled or ascertained. Of this nature, also, are bills brought to enforce trusts or assignments for creditors and other instances where there is a community of interest, or where the law devolves upon the court the duty of taking a fund into its custody and distributing it according to the respective interests of the parties. In such cases no priority can be acquired by one person suing or making himself a party before others."

Mr. Bispham, discussing the various classes of creditors' bills, says:

"The personal liability of executors may be enforced by such bills and indeed in some jurisdictions such liability is enforceable in equity alone," citing Warner v. Hopkins, 111 Pa. 328, 2 Atl. 83, 56 Am. Rep. 266, "in which is reiterated the general doctrine that a creditor's bill may be maintained against the directors of an insolvent corporation for the mismanagement of its affairs."

When the estate of the insolvent corporation is adjudged bankrupt and the trustee is prosecuting the defendant director for the alleged default or breach of duty which is the basis of this action, the cases cited and many more easily to be found apply with special force.

It will be noted that in the prayer for relief plaintiff asks:

"That the amount of the liability of the said John P. Council to your orator by reason of his negligent failure, as an officer of the said company, to see that the said contract of June 27, 1913, filed as Exhibit B, as above, was complied with, be ascertained and fixed."

[2] I am of the opinion, upon the allegations in the bill and the evidence, that plaintiff is not entitled to maintain his bill or recover for losses alleged to have been sustained by him, by reason, or on account of, defendant's failure to discharge the duty which he owed to the corporation and which, upon the adjudication in bankruptcy and the appointment and qualification of the trustee, vested in him.

While there is some obscurity in the allegations and the specific prayers for relief, the prayer for "general relief" is sufficiently comprehensive to entitle plaintiff to such other and further relief as may be within the scope of the bill and sustained by the evidence.

The learned counsel for plaintiff thus formulates one of his "contentions":

"That defendant is liable to complainant for breach of trust and neglect of duty, by reason of which he, complainant, lost a very large sum of money—the value and proceeds of goods consigned to the J. R. Council & Company, Incorporated, and which was lost by reason of such neglect."

The position is taken, in the well-considered brief, that, viewed in the light of the contracts (Exhibits A and B)—

"The relation between the defendant and complainant is more nearly that of a fiduciary relation—trustee and cestui que trust—than is the case was

a creditor or stockholder of a corporation. In such cases the relation of officers and directors of corporations to the creditors and stockholders is often spoken of as that of quasi trusteeship. But it seems to be established that the officers and directors of a corporation, which is trustee for a person, are themselves trustees for that person."

In support of this proposition Chemical Co. v. Floyd, 158 N. C. 455, 74 S. E. 465, is appropriately cited. The complaint in that case, which was sustained by the Supreme Court, upon demurrer, was drawn and the case argued upon appeal, by one of the learned counsel for complainant. The opinion of Mr. Justice Allen follows the argument and sustains the conclusion of counsel. An analysis of both will clarify the question with which we are dealing. In that case Floyd Bros. & Mitchell, Incorporated, of which defendant O. L. Floyd was secretary and treasurer and A. N. Mitchell was president, entered into a contract with plaintiff chemical company, by which it became the agent of said company and as such agent received on consignment fertilizers, the title to which remained in the company until sold and the proceeds, including notes, etc., taken for the purchase of money, when sold, were the property of plaintiff company. The defendants Floyd and Mitchell were largely in control of the business. Plaintiff alleged that the corporation collected certain money, amounting to $872.61, being the proceeds of the fertilizers which were consigned to it for sale, pursuant to the terms of the contract, and that defendants knew that the said money was the property of the plaintiff and that it was the duty of Floyd, Mitchell Company, Incorporated, its officers, agents, and employees, to pay to plaintiff said sum, and that in violation of said duty, O. L. Floyd and A. A. Mitchell misappropriated and misapplied said sum of money to other purposes, in violation of the trust imposed upon each of them by said contract, and thereby perpetrated a fraud upon plaintiff wherein they became personally responsible for said breach of trust.

A similar allegation is made in respect to the misappropriation by defendants Floyd and Mitchell of other moneys—the proceeds of notes taken for the purchase price of the fertilizer consigned to and sold by the corporation.

Defendants demurred to the complaint, assigning, among other causes of demurrer, that neither the corporation nor the trustee in bankruptcy was a party; that there was a misjoinder of parties, and that complaint did not state a cause of action.

Justice Allen clearly stated the distinction between the cases in which the action was for a breach of duty or negligent omission to discharge the imposed duty by directors and officers of a corporation and the instant case. Noting that the demurrer admitted the allegations of the complaint, he also notes that the cause of action is for misappropriation of property belonging to plaintiff and not of property of the corporation. He says:

"In Coble v. Beall, 130 N. C. 533, a stockholder sued the directors of a bank for fraudulent and wrongful mismanagement of the property of the bank, and in Latta v. Electric Co., 146 N. C. 309, the action was for the fraudulent disposition of the property of the corporation by its officers; and it was held in each that the action should have been brought by a receiver, if one had been appointed and, if not, by the corporation."

"It appears, therefore, that the cause of action is against Floyd and Mitchell for misappropriating property which they knew belonged to the plaintiff. The complaint does not allege that the defendants converted the property to their own use, and the only other reasonable inference is that they used it for the benefit of their corporation."

He concludes that, upon this case, as made by the complaint and demurrer, neither the corporation nor the receiver could sue them—the corporation received and used the property. The wrong of which plaintiff complained, as against the defendants, was therefore personal, and they alone were liable.

In Cone v. Fruit Growers' Association, 171 N. C. 530, 88 S. E. 860, it was held, upon the authority of the Floyd Case, that when goods are consigned to a corporation for sale, the proceeds to be held as the property of the consignor, and such proceeds were intentionally misapplied, the officers in control of the funds, who have knowingly participated in the wrong, may be held individually liable. The nonsuit as to the president and manager of the corporation was set aside, but as to the other directors, who were not shown to have had any knowledge of the misappropriation of the money, the nonsuit was sustained.

In Virginia-Carolina Chemical Co. v. Ehrich (D. C. E. D. S. C.) 230 Fed. 1005, I had occasion to deal with and consider the question presented here. The Rosemary Mercantile Company, Inc., entered into a contract with the chemical company containing the same provisions as the one involved in the Floyd-Mitchell Case, supra. The evidence showed that the president and secretary received, for the mercantile company, money derived from the collection of notes given for the sale of fertilizers consigned to it and misappropriated the money. The company was adjudged bankrupt, whereupon the chemical company filed a bill against the president, secretary, and directors of the bankrupt company.

The case was referred to a master, who found his conclusions to the court. The case, upon exceptions, was heard by the writer of this opinion. The master found that—

"The president and treasurer had actual knowledge of all the transactions set forth in the bill of complaint, but that the other directors, defendants, did not have any actual knowledge of the contract and the collections made thereunder, other than such knowledge as they might have, generally, of the method of dealing on the part of the Rosemary Mercantile Company in the purchase of fertilizers."

The case, upon the pleadings and findings, presented the question whether:

"Assuming that a liability to execute the trust was imposed by the receipt of the notes and accounts upon the corporation and that the chemical company would be entitled to a decree against it, directing the payment of the amount collected and not paid over for a breach of trust, the question presented is whether, upon the facts found by the master, the defendants, directors, are personally liable therefor."

The basis upon which such liability is imposed upon the directors and the distinction between liability imposed by reason of active wrongdoing and negligence is clearly stated by Chief Justice Fuller in Briggs v. Spaulding, 141 U. S. 132, 11 Sup. Ct. 924, 35 L. Ed. 662, wherein he says:

"It is not contended that the defendants knowingly violated or permitted the violation, of any of the provisions of the Banking Act, or that they were guilty of any dishonesty in administering the affairs of the bank; but it is charged that they did not diligently perform duties devolved upon them by the act."

Following a thorough and exhaustive discussion of the relation between corporations and their directors and the standard of duty imposed, the learned Chief Justice concludes:

"Here, again, it should be observed that even trustees are not liable for the wrongful acts of their cotrustees, unless they connive at them, or are guilty of negligence conducive to their commission."

After a careful examination of the report of the master and of the decided cases, especially the very able opinion of the Chief Justice in Briggs v. Spaulding, supra, the conclusion was reached that, for misappropriation of the funds received by the corporation, the president and secretary, who actively participated in their receipt and misapplication, were liable; that the other directors were upon the facts found by the master not liable. No appeal was taken from the decree.

[3] The only evidence in this record of actual misappropriation of the funds of the J. R. Council & Co., Incorporated, by any of its officers, is that at some date, not clearly fixed, about January, 1920, J. R. Council lost a large amount in a cotton speculation which he paid by using and misapplying about $35,000 of the money belonging to J. R. Council & Co., Incorporated. In respect to this misapplication of the company's money, defendant, J. P. Council, testifies that the first knowledge which he had of it was upon receiving "the first tentative report" of the auditor. This was during the fall of the year 1920. He is not contradicted, nor is there any evidence to the contrary. It is manifest that he neither knew of, nor suspected, this conduct on the part of his son. I am strongly impressed with the transparent frankness, truthfulness, and honesty of the defendant. Whatever his liability to the corporation may be on account of his failure to perform his duty as president and director, there is not a scintilla of evidence reflecting upon his honor or integrity in his relation to this unfortunate effort to aid his son.

The system of bookkeeping used by J. R. Council & Co., Incorporated, does not enable the auditor to fix any specific money—as the proceeds of plaintiff's goods. The company, as shown by the auditor's report, borrowed large amounts from banks, and, upon its insolvency, held accounts receivable and other property of large amounts. It seems, although it is difficult to speak with any certainty, that its nominal assets exceeded its nominal liabilities. This situation renders it difficult, if not impossible, to trace and locate the disposition of any specific fund derived from the sale of plaintiff's goods, impressed with a trust.

To the suggestion that defendant "ought to have known and, but for his negligence would have known," of the manner in which the accounts between plaintiff and the J. R. Council & Co., Incorporated, were kept and the proceeds of the goods disposed of, it may be sug-

gested per contra that, although plaintiff shipped large quantities of goods to the company and received during seven years large amounts therefor, lived within a short distance of, and, J. R. Council says, made monthly visits to Norfolk, he was unable to do so. While the suggestion of contributory negligence is not open to defendant, there is much in the evidence which discloses want of ordinary care on the part of the plaintiff, in looking after his dealings with the J. R. Council & Co., Incorporated. The courts, in endeavoring to find and fix a fair and reasonable principle upon which to define the standard and measure of liability of officers and other agents of corporations, have employed language which is often irreconcilable and formulated rules which, however well understood in the abstract, have been found difficult of application and led to conflicting judgments. 7 R. C. L. 491. Much depends upon the character of the business conducted by the corporation. Many of the decided cases involved the liability of directors of banks, rendered insolvent by bad loans and defalcations of officers. Briggs v. Spaulding, supra; Solomon v. Bates, 118 N. C. 311, 24 S. E. 478, 54 Am. St. Rep. 725; and other North Carolina decisons to which reference is made in Coble v. Beall, supra. It is not difficult to collect and array opinions in which expressions of varying intensity and significance are used, reflecting the mental attitude of the judge, or the peculiar facts disclosed by the evidence. The very exhaustive examination of decided cases, resulting in the well-considered conclusions reached by Chief Justice Fuller in Briggs v. Spaulding, supra, furnish a safe and just basis for the guidance of courts in similar cases. That was a suit in equity by the receiver of an insolvent bank. Respecting the measure of liability imposed upon officers and directors of corporations, he says:

"In any view of the degree of care to which these defendants were bound, is that which ordinarily prudent and diligent men would exercise under similar circumstances, and in determinig that the restrictions of the statute and the usages of business should be taken into account. What may be negligence in one case, may not be want of ordinary care in another, and the question of negligence is therefore, ultimately a question of fact to be determined under all the circumstances."

He quotes with approval the language of a very able and wise English Equity Judge, who says:

"One must be very careful in administering the law of joint-stock companies, not to press so hard on honest directors as to make them liable for these constructive defaults, the only effect of which would be to deter all men of any property and, perhaps, all men who have any character to lose, from becoming directors at all. On the one hand, I think the court should do its utmost to bring fraudulent directors to account and, on the other hand, should also do its best to allow honest men to act reasonably as directors." Sir George Jessel, in Re Forest of Dean Coal Mining Co., 10 Ch. D. 450.

[4] The Chief Justice says:

"Treated as a cause of action in favor of the corporation, a liability of this kind should not lightly be imposed, in the absence of any element of positive misfeasance, and solely upon the ground of passive negligence; and it must be made to appear that the losses for which defendants are required to respond were the natural and necessary consequences of omission on their part."

Measured by this standard of duty, I am not prepared to approve the course pursued by the defendant in respect to the discharge of the duty imposed upon him as president and director, nor to fix liability for losses sustained by the corporation unless shown to have been the natural and necessary consequences of such negligence. For the reasons set forth, both upon principle and authority he is liable to the extent stated, to the corporation and its representative and thereby to plaintiff as to its other creditors; such liability to be enforced by the corporation or its representative.

Notwithstanding the reiteration, with accumulating intensity, of language found in the bill, I am not able to find any evidence of either positive misfeasance, misappropriation, or other dishonest or fraudulent conduct by the defendant; nor do I find any evidence of knowledge of such conduct by the secretary and manager, or such information in respect to such conduct, as fixes him with liability as a particeps criminis, upon the principles announced in Chemical Co. v. Floyd; Chemical Co. v. Ehrich, supra; and other decided cases.

The last ground upon which plaintiff seeks to hold defendant liable is his suretyship on the bond of $30,000, executed June 27, 1913, in accordance with the provisions of the contract between plaintiff and defendant (Exhibit A).

Concurring with counsel for plaintiff that, for the purpose of interpreting and ascertaining the intention of the parties and, as it were, putting ourselves in their position, we find that the Holland-Council Company, Incorporated, had recently been adjudged bankrupt; plaintiff, defendant, and others had suffered loss. There was no suggestion that defendant was personally liable to the creditors; he had lost heavily on account of indorsements of the notes of the company. He was requested to leave his home in North Carolina and go to Norfolk, Va., for a conference with the creditors, several of whom, including the plaintiff, desired the formation of a new corporation, the purchase by defendant of the claims of creditors and a resumption of business of the same character as that conducted by the bankrupt company. Defendant was willing to aid his son, who, with the confidence incident to youth, frequently indulged at the expense of age and experience, desired to "try again." The arrangement was made and the papers drawn by plaintiff's attorneys, of which defendant makes no complaint. It is, however, evidence of the confidence reposed in others and his own integrity of purpose. He says, very naturally and manifestly truthfully, that he signed some papers which he finds now that he did not understand. He contributed to the capital stock of the new company, purchased the claims of the other creditors, including the claim of plaintiff, paying 50 per cent. cash, and pledging one-half the dividends on the common stock for the balance. The plaintiff received from the trustee of Holland-Council Company goods and merchandise consigned by him, which had not been sold, valued at $15,000, which, under the terms of the contract (Exhibits A and B) he desired to deliver immediately to the newly formed company on consignment. To meet this condition and insure the performance of the provisions of the contract (Exhibit B), defendant (Exhibit A) obligated

himself, personally, that J. R. Council & Co., Incorporated, would execute a bond to plaintiff for the faithful performance of said agreement and payment to said Andrew J. Lewis, for all goods shipped pursuant thereto, which defendant should execute as surety, "in the penalty of at least double the value of all goods shipped on the order of said J. R. Council & Co., Incorporated, at any one time," and to immediately·deliver said bond to the said Andrew J. Lewis, "provided, however, that the said J. P. Council shall not, under the terms hereof, of the said contract, or of the said bond, be in any way rendered, or held liable for the proceeds of any goods sold by the said J. R. Council & Co., Incorporated, which shall not have been collected by the said J. R. Council & Co., Incorporated." This, it will be noted, is the personal contract of defendant.

On the same day and manifestly simultaneously, the contract (Exhibit B) between the corporation and plaintiff was executed, in which, among numerous other obligations, it promises to give to the plaintiff a bond in the penalty of at least double the value of all goods consigned to it by the said principal, "which may be in its possession at any one time, for which the proceeds have not been properly re-·mitted to the principal in the manner above provided with J. P. Council, as surety, conditioned for the faithful performance of this agreement and the prompt account for and payment to the said principal, for all such goods and the proceeds thereof, as may be consigned to the said agent in the said principal provided, however, etc."

It will be observed that J. P. Council, personally, obligated himself to become surety on a bond in double the penalty of all goods shipped on order of said J. R. Council & Co., Incorporated, *at any one time,* whereas the corporation obligated itself to execute a bond with J. P. Council as surety with penalty *in at least double the value* of all goods so consigned to it by the principal *which may be in its possession at any one time,* etc.

Referring to the bond, executed on the same day, we find, in the recital, reference to the contract between the corporation and plaintiff (Exhibit B), "a copy of which said contract is hereto attached as a part of this bond, as fully as if the same were herein set forth at length."

Now, therefore, if the said J. R. Council & Co., Incorporated, shall well and truly perform all of its agreements in the said contract set forth, this obligation shall be null and void, otherwise to remain in full force and effect." So far the terms of the bond, read with the terms of the contract, are fairly plain. It is, however, provided in the contract that J. R. Council & Co., Incorporated, shall be liable to pay the plaintiff the full amount of the proceeds of the sale of goods consigned to it, "whether collected or not."

The proviso that J. P. Council shall be liable only for proceeds of goods which shall be collected is found in both contracts and the bond. It limits the general terms of the contract (Exhibit B), which is to be considered as if it is written into the bond, and confines defendant's liability to the payment of such part of the proceeds of the sale of plaintiff's goods consigned to and sold by the company which

have been collected by the company. The words "which may be in its possession at any one time" fix the amount of the penalty. The penalty of the bond was fixed at double the value of the goods received by plaintiff from the trustee of Holland-Council Company and consigned to J. R. Council & Co., Incorporated.

If the bond be construed as security only for these goods, in the absence of any evidence that they were sold, the proceeds collected, and not paid over to plaintiff, no recovery could be had upon it. Plaintiff contends that defendant by the provisions of his contract (Exhibit A) was obligated to execute successive bonds in double the value of all goods shipped on order of J. R. Council & Co., Incorporated, "at any one time," and suggests that this court will enforce such obligation by regarding such bonds as having been executed. A number of objections to this suggestion occur to the mind. If his contract with plaintiff (Exhibit A) be so construed, it is abandoned by the terms of the bond in which (Exhibit B) is incorporated, which confines the obligation to execute a bond in double the value of the goods so consigned, "which may be in its possession at any one time." Treating the bill as containing a prayer for specific performance of the terms of the contract (Exhibit B), there is a total absence of any evidence of the value of goods shipped and in the possession of J. R. Council & Co., Incorporated, "at any one time," except at the date of the bond, June 27, 1913, which was fixed at $15,000.

Again, if new bonds had been executed from time to time, between June 27, 1913, and October, 1920, there is no evidence by which the court could find that the proceeds of all of the goods consigned by plaintiff had been collected, which would be necessary to enable plaintiff to recover the value of the goods, etc. The plaintiff is confined to the terms of the bond executed June 27, 1913. The condition of the bond, read in connection with the contract, is sufficiently broad to include liability for failure to perform any of the provisions of the contract, limited to liability for the failure to account for and pay to plaintiff the proceeds of goods consigned, which have been sold and the proceeds thereof collected, during the life of the contract. The sole question remaining open is whether the burden is upon plaintiff to show the amount of money, the proceeds of the sale of such goods which were collected and not paid to him, and, if so, whether upon the evidence such amount can be determined.

There can be no doubt, upon the evidence, that J. R. Council & Co., Incorporated, are indebted to plaintiff in an amount in excess of the penalty of the bond for goods consigned to it and sold as agent of plaintiff. It is not possible, from the auditor's report and evidence, to fix the total amount sold or the exact amount collected.

The schedule filed by the J. R. Council & Co., Incorporated, in bankruptcy, shows that it had but a small amount of cash on hand. It had accounts receivable $56,516.28, of which $35,031.74 is owing by J. R. Council. Of the accounts receivable, J. R. Council reports that $3,073.72 represents uncollected proceeds of sales of plaintiff's goods. The total amount of goods received as shown by auditor's final report is $73,560.14. If the amount be fixed at $37,734.69, found

due by auditor, by his first audit and admitted by J. R. Council, a balance in excess of $30,000 is shown.

There is a painful uncertainty surrounding the dealings between plaintiff and the J. R. Council & Co., Incorporated, due largely to the manner in which the books were kept.

A decree will be drawn that plaintiff recover of defendant, J. P. Council, $30,000, with interest from November 1, 1920, and cost.