**UNITED STATES v. STONE CLIFF COAL & COKE CO. et al.**

No. 1081.

District Court, S. D. West Virginia.
March 29, 1934.

Okey P. Keadle, of Huntington, W. Va., and W. F. Evans, of Washington, D. C., for plaintiff.

Robert S. Spilman and Hawthorne D. Battle, both of Charleston, W. Va. (Price, Smith & Spilman, of Charleston, W. Va., on the brief), for defendants Arthur M. Hill and

Kanawha Banking & Trust Co., executors of the will of F. M. Staunton, deceased, Edward Calderwood and H. B. Lewis.

J. Hunter McClintic, of Charleston, W. Va., for defendant G. T. Thayer.

Staige Davis, of Charleston, W. Va., for defendant T. C. Beury.

McCLINTIC, District Judge.

This suit was instituted to recover the sum of $55,255.82, together with interest thereon, on account of income tax assessments made by the Commissioner of Internal Revenue against the Stone Cliff Coal & Coke Company for the years 1915, 1916, and 1917. The Stone Cliff Company admits liability for the assessments for the years 1915 and 1916, amounting to $94.12, but the other defendants deny liability therefor. The Stone Cliff Company contends that no income tax was payable by it for the year 1917, and it, as well as the other defendants, denies liability for any part of the assessments for that year, amounting to the principal sum of $55,161.70. Liability for this item constitutes the only substantial question in this case.

The alleged liability of the individual defendants is based on the claim of the plaintiff that these parties, while directors of the Stone Cliff Company, distributed and dissipated the assets of this company without paying debts due the United States. The facts are as follows:

In the year 1917, and for many years prior thereto, the Stone Cliff Coal & Coke Company, a West Virginia corporation, was engaged in operating, for coal mining purposes, a lease of approximately 1,214 acres of land situated on New river in Fayette county, W. Va. Its capital stock consisted of 600 shares of common stock of a par value of $100 each, of which 480 shares were owned by the defendant T. C. Beury, who was also president and general manager of the company, and 120 shares were owned by the defendant G. T. Thayer. The chief assets of the company were its leasehold estate and the mining equipment thereon.

On September 10, 1917, the Kanawha Banking & Trust Company of Charleston, W. Va., purchased from T. C. Beury, personally, at their par value, 100 bonds of the Stone Cliff Coal & Coke Company, of the par value of $500 each, and certain unpaid interest coupons attached thereto, in the amount of $7,-500, all duly acquired some years prior thereto by Mr. Beury. These bonds constituted a first lien upon the leasehold estate, and all other assets then owned or thereafter ac-

quired by this company, under a deed of trust duly executed by the company on July 1, 1912. In connection with this purchase, F. M. Staunton, H. B. Lewis, and Edward Calderwood, who were officers of the Kanawha Banking & Trust Company, were elected directors of the Stone Cliff Company. At the time Mr. Staunton was the president, Mr. Lewis, the cashier, and Mr. Calderwood, the assistant cashier of the Kanawha Banking & Trust Company. The other two directors of the company were T. C. Beury and G. T. Thayer. Mr. Staunton was the active head of the Kanawha Banking & Trust Company, and handled most of its important matters, including its transactions with the Stone Cliff Company. He was one of the original defendants, but was dead at the time of the trial of this cause.

In the early part of November, 1917, T. C. Beury, who throughout was in active charge and control of all the affairs of the Stone Cliff Company, and owned or operated a number of coal companies in West Virginia, entered into negotiations with the West Virginia Coal Company of Richmond, Va., for the sale to it of the assets of the Stone Cliff Company. These negotiations were concluded on November 20, 1917, by a written agreement by which the Stone Cliff Company, through Mr. Beury, agreed to sell its assets to the West Virginia Coal Company for a stated price of $162,500 cash. However, this agreement was conditioned upon the purchase by T. C. Beury, individually, from the West Virginia Coal Company of the entire capital stock of the Elmo Mining Company at a price of $125,000 cash, it being further provided that the difference between the respective purchase prices, i. e., $37,500, was to be credited upon indebtedness due from T. C. Beury to the West Virginia Coal Company. This transaction, which was in effect an exchange, was to become effective December 15, 1917. At this time, the Elmo Mining Company was an operating coal company. Practically its only asset was a lease on 1,177 acres of coal land on New river in Fayette county, W. Va., in the vicinity of the Stone Cliff property, together with the mining equipment thereon.

The possession of the Stone Cliff property was turned over to the West Virginia Coal Company, pursuant to this agreement, in December, 1917. At the time of the transfer of possession, the West Virginia Coal Company credited to Mr. Beury the sum of $37,500. At the same time, the West Virginia Coal Company charged to Beury's account on their books the sum of $10,000 to discharge a note

in the amount of $10,000 owing by the Stone Cliff Company to the West Virginia Coal Company. T. C. Beury therefore received a net credit to his personal account of $27,500. No cash or property whatsoever, other than that already mentioned, was actually involved in this transaction, nor did T. C. Beury or the Stone Cliff Company ever receive any cash or other property.

The West Virginia Coal Company refused to surrender the stock of the Elmo Mining Company until the delivery to it of the bonds of the Stone Cliff Company then outstanding, and the payment of certain other outstanding notes of the Stone Cliff Company, amounting to $9,000. Whereupon, on February 20, 1918, Mr. Beury, with his own funds, purchased, at their face value, the outstanding bonds and unpaid interest coupons of the Stone Cliff Company from the Kanawha Banking & Trust Company for the sum of $59,000, and forwarded them to the West Virginia Coal Company. On the same date, Mr. Beury, with his own funds, paid two notes of the Stone Cliff Company amounting to the sum of $9,000, above mentioned. On March 4, 1918, the Stone Cliff Company assigned, by proper written instrument, executed by its president, T. C. Beury, its lease, leasehold estate, and all improvements thereon, to the West Virginia Coal Company.

On March 12, 1918, Mr. Beury first mentioned the transaction with the West Virginia Coal Company to his directors, the individual defendants, when he, in an informal way, requested them to sign certain minutes which he had already prepared containing a resolution authorizing the transfer of the lease of the Stone Cliff Company to the West Virginia Coal Company. This was done. Mr. Beury then again called upon the West Virginia Coal Company to surrender the Elmo stock, but it refused to do so. It was then learned that the Elmo Company stock was pledged to the Planters' National Bank of Richmond, Va., as collateral security for a loan evidenced by a note of the Elmo Company indorsed by the West Virginia Coal Company, in the amount of $35,000. Whereupon, Mr. Beury, with his own funds, reduced this indebtedness to $27,000, but was unable to make further payments. Later, in the year 1919, Mr. Beury got the Matthew Addy Company of Cincinnati, Ohio, to purchase the note evidencing this indebtedness, secured by said collateral. A few months later, upon default in the payment of the indebtedness, the Matthew Addy Company purchased the Elmo stock for the amount of the note.

The net operating income of the Stone Cliff Company for the year 1917 was the sum of $31,621.51, exclusive of the profit or loss resulting from its transaction with the West Virginia Coal Company. The net value, in the year 1917, of the assets of the company, transferred to the West Virginia Coal Company, was the sum of $94,332.89, based on the March 1, 1913, value thereof, less depreciation, having been so fixed by the Commissioner of Internal Revenue. Upon the erroneous supposition that these assets were sold for $162,500, the Commissioner of Internal Revenue assessed the tax in controversy herein for the year 1917, against the Stone Cliff Company. Accordingly, it is of prime importance to determine just what consideration the Stone Cliff Company received, or should have received, from its transaction with the West Virginia Coal Company. The value of $162,500 placed on the Stone Cliff stock and of $125,000 placed on the Elmo stock were unreal and were fixed at these figures in order to enable the West Virginia Coal Company to increase its invested capital account.

The primary asset of the Elmo Mining Company was its leasehold estate upon which was located a vein of coal from 22 to 32 inches in thickness, very expensive to operate. The mine could not be operated at a profit in normal times, and with the possible exception of the year 1917, every company which had operated it had lost money. The equipment was antiquated and badly in need of repair. The company had no other assets of any value. The defendants introduced the testimony of numerous experienced coal operators, entirely familiar with this property, and several former superintendents of the mine, whose opinion as to the value of this property in the year 1917 ranged from a maximum of $50,000 to a minimum of no value at all.

The plaintiff's evidence on this question is of little value, since its witnesses were not familiar with the property. The record does not disclose any bona fide sale of stock of the Elmo Company.

Based on the evidence introduced herein, I am of opinion, and so find, that the fair market value of the 500 shares of stock in the Elmo Mining Company was the sum of $25,000 at the time it should have been acquired by the Stone Cliff Company in December, 1917.

In regard to the connection of the individual defendants, Staunton, Calderwood, Lewis, and Thayer, it is not claimed that they acted fraudulently or dishonestly as directors

of the Stone Cliff Company, and I find that they acted honestly and in good faith. No one of them received any part of any consideration alleged to have been paid by the West Virginia Coal Company for the Stone Cliff assets, or any other benefit of any kind from this transaction. The same is true of the Kanawha Banking & Trust Company. They did not participate in any way in the settlement made between West Virginia Coal Company and T. C. Beury. Furthermore, these defendants did not know at the time this transaction was consummated that there was, or would be, any liability to, or even claimed by, the plaintiff, United States of America, against the Stone Cliff Company for income tax or other obligations. They had the right to rely upon T. C. Beury, the president, general manager, and principal stockholder of the Stone Cliff Company, owning a substantial majority of its outstanding capital stock, and in sole active charge of the management of its business and affairs, who alone negotiated this transaction with the West Virginia Coal Company, to consummate it legally. They had no reason to foresee or suspect that the rights of the plaintiff or of any other creditor of the Stone Cliff Company would be prejudiced or affected by any action which the said Beury might take. In fact, by far the greater part of the amount now claimed by the plaintiff as income tax for the year 1917, was not assessed until 1923, over two years after this suit was instituted.

Upon these facts, two questions are presented: (1) Whether the defendants, Staunton, Lewis, Calderwood, Thayer, and T. C. Beury, are liable, individually, for the tax assessed against Stone Cliff Company by the plaintiff, or any part thereof, assuming that such assessments were properly made against the Stone Cliff Company, and (2) Whether the Stone Cliff Company is liable for the tax claimed from it by the plaintiff herein.

Consideration of the first question involves (a) the liability, if any, of the defendants, Lewis, Calderwood, Staunton (now Kanawha Banking & Trust Company and A. M. Hill, executors of the will of F. M. Staunton, deceased), and Thayer; and (b) the liability, if any, of T. C. Beury.

At the outset, it must be borne in mind that the asserted liability of the defendants, Staunton, Calderwood, Lewis, and Thayer, rests upon their alleged negligence as directors and officers of the company. Whether or not these defendants were negligent is purely a question of fact, dependent upon the peculiar circumstances of this case. The rule is stated in Morawetz on Private Corporations, § 552, as follows:

"What constitutes a proper performance of the duties of a director is a question of fact which must be determined in each case in view of all the circumstances; the character of the company, the condition of its business, the usual methods of managing such company, and all other relevant facts must be taken into consideration."

To the same effect is Thompson on Corporations, § 1385.

The plaintiff has not complained of the transaction between the Stone Cliff Company and the West Virginia Coal Company, but, on the contrary, has impliedly approved such transfer of assets, and has based the tax assessed primarily thereon. According to the plaintiff's theory, after the proceeds were turned over to Beury, the failure of the directors to take the proceeds away from Beury and apply them to the payment of plaintiff's claims here asserted, constituted actionable negligence which rendered these directors personally liable. These directors had not elected Mr. Beury president and general manager of the Stone Cliff Company. He, not they, owned or controlled its outstanding capital stock. They could have been removed at any time by Beury. He was in control and managed all of the company's business and affairs, when they became directors at the time the Kanawha Banking & Trust Company purchased the bonds of the Stone Cliff Company, in the year 1917. With the purchase of said bonds by T. C. Beury from the trust company, in February, 1918, all interest of Staunton, Calderwood, and Lewis in the Stone Cliff Company terminated. As stated above, neither they nor Thayer knew, in March, 1918, when Beury asked them to sign the minutes of the directors' meeting of March 12, 1918, authorizing him to assign the leasehold only of the Stone Cliff Company to the West Virginia Coal Company, of any claim of the plaintiff. This was primarily and essentially Mr. Beury's business. There was nothing about it tending to create suspicion. In view of Beury's long ownership and management of the Stone Cliff Company, it cannot reasonably be said these directors were negligent in acceding to his request. Their liability is predicated upon this isolated transaction.

As stated in Briggs v. Spaulding, 141 U. S. 132, at pages 147 and 149, 11 S. Ct. 924, 929, 35 L. Ed. 662:

" * * * The degree of care required depends upon the subject to which it is to be

applied, and each case has to be determined in view of all the circumstances. They are not insurers of the fidelity of the agents whom they have appointed, who are not their agents, but the agents of the corporation; and they cannot be held responsible for losses resulting from the wrongful acts or omissions of other directors or agents, unless the loss is a consequence of their own neglect of duty, either for failure to supervise the business with attention, or in neglecting to use proper care in the appointment of agents. * * * On the one hand, I think the court should do its utmost to bring fraudulent directors to account; and, on the other hand, should also do its best to allow honest men to act reasonably as directors."

The case of Lewis v. Council (D. C. N. C. 1923) 291 F. 148, 163, involved the liability of a director of a company for a breach of trust committed by an officer thereof. The court held the defendant not liable, saying, in the opinion by Connor, D. J.:

"Notwithstanding the reiteration, with accumulating intensity, of language found in the bill, I am not able to find any evidence of either positive misfeasance, misappropriation, or other dishonest or fraudulent conduct by the defendant; nor do I find any evidence of knowledge of such conduct by the secretary and manager, or such information in respect to such conduct, as fixes him with liability as a particeps criminis, upon the principles announced in Chemical Co. v. Floyd [158 N. C. 455, 74 S. E. 465]; Chemical Co. v. Ehrich, supra [(D. C.) 230 F. 1005]; and other decided cases. * * *"

See, also, Bates v. Dresser, 251 U. S. 524, 40 S. Ct. 247, 64 L. Ed. 388; Fletcher, Cyclopedia Corporations, § 2472.

■ Nor has the plaintiff shown that any acts of commission or omission of the defendants, Lewis, Calderwood, Staunton, and Thayer, were the proximate cause of any loss to it. As stated in the opinion in the Briggs Case, supra: "It must be made to appear that the losses for which defendants are required to respond were the natural and necessary consequence of omission on their part."

To the same effect see 7 R. C. L., title, Corporations, § 475; Warner v. Penoyer (C. C. A. 2d 1898) 91 F. 587, 44 L. R. A. 761; Virginia-Carolina Chemical Co. v. Ehrich (D. C. S. C. 1916) 230 F. 1005.

■ Upon all the facts and circumstances of the situation as disclosed from a careful consideration of the record, I am of opinion, and so find, that these directors were not negligent; that they acted honestly and as reasonably prudent men would have acted under the circumstances, and that no act of commission or omission on their part was the proximate cause of any loss to the plaintiff, and, accordingly, they should not be charged with the alleged liability of the Stone Cliff Company for taxes claimed to be due the plaintiff herein.

■ Now, as to the liability of the defendant T. C. Beury. It is shown that early in the year 1918, when Beury should have gotten the stock of Elmo Mining Company for the benefit of the Stone Cliff Company, as plaintiff claims, he held valid claims against the latter company in the amount of $68,000, of which the sum of $59,000, represented by the bonds he had purchased from the Kanawha Banking & Trust Company, was secured by a first lien on all its property. Even assuming Beury had no right to credit to his personal account the net sum of $27,500 on the books of the West Virginia Coal Company, there would remain a valid first lien claim of $31,500 against the Elmo stock, which was more than it was worth. In addition, the stock stood pledged for a loan to the Planters' Bank in the amount of $35,000, which the Stone Cliff Company could not pay. But without regard to the latter item, there was no equity in the stock for the plaintiff. Under these facts, Beury is not liable for his failure to pay the plaintiff's claim. He had a legal right to the assets of the Stone Cliff Company superior to that of the plaintiff. United States v. Lam (D. C. Ky. 1927), 26 F.(2d) 830, is in point here.

■ The remaining question presented is the liability of the Stone Cliff Company for the three assessments, aggregating the principal sum of $55,161.70, made against it by the plaintiff for taxes alleged to be owing for the year 1917. The relevant facts are not in controversy, except the fair value of the Elmo Company stock, which plaintiff alleges should have been received by the Stone Cliff Company. No bona fide sale of this stock is disclosed by the evidence. Therefore, the cases of The Albert Dumois, 177 U. S. 240, 20 S. Ct. 595, 44 L. Ed. 751, and Hinkel v. Motter (D. C.) 39 F.(2d) 159, relied on by the plaintiff, do not apply to the instant case. However, the value of the assets is a relevant fact bearing upon the value of this stock. As stated by Mr. Justice Brandeis, in Ray Consolidated Copper Co. v. U. S., 268 U. S. 373, 45 S. Ct. 526, 528, 69 L. Ed. 1003:

"* * * The capital stock of a corpo-

**6**

ration, its net assets, and its shares of stock are entirely different things. * * * The value of one bears no fixed or necessary relation to the value of the other. The net fair value of the assets was clearly a relevant fact bearing upon the value of the capital stock. It does not appear that the Commissioner refused to consider the selling price of the shares or other factors. He may have given much consideration to the selling price of the shares, and have concluded that, under the conditions prevailing in the year 1920, the average price at which relatively small lots were sold on the Stock Exchange was not a fair indication of the value of the capital stock. We cannot say that he acted arbitrarily or abused his discretion in concluding that 'the fair value of the capital stock considered as a whole is not materially less than the net fair value of the assets.' * * * "

I have carefully considered the earnings of the company, the value and character of its assets, the transactions involving the transfers of this stock, and all other relevant factors affecting the value of this stock, and have come to the conclusion, and so find, that its fair market value was $50 a share at the time of this transaction, in December, 1917, making a total value of $25,000 for the 500 shares.

It follows, therefore, that the Stone Cliff Company suffered a loss in at least the sum of $31,832.89 on its exchange with the West Virginia Coal Company. I say "at least" because it is very doubtful whether the Stone Cliff Company was entitled to the Elmo stock until it had paid the loan due the Planters' Bank, for which this stock had been deposited as collateral. The net income of the Stone Cliff Company, exclusive of the profit or loss from the transaction with the West Virginia Coal Company, was $31,621.51. This operating income was more than offset by the loss suffered by the company in the transfer of its assets. I am, therefore, of opinion that no tax is due the plaintiff from the Stone Cliff Coal & Coke Company for the year 1917.

The plaintiff is entitled to recover from the defendant Stone Cliff Coal & Coke Company the assessments for the years 1915 and 1916 aggregating the principal sum of $94.12, together with interest thereon. It follows from my views hereinbefore expressed that there is no sum due the plaintiff from the Stone Cliff Coal & Coke Company on account of income taxes assessed against it for the year 1917; also that there is no sum whatsoever due to the plaintiff from the defendants, Kan-

awha Banking & Trust Company and A. M. Hill, executors of the will of F. M. Staunton, deceased, H. B. Lewis, Edward Calderwood, G. T. Thayer, and T. C. Beury, and that plaintiff's bills of complaint should be dismissed as to them. A decree may be prepared in accordance with the foregoing.