**James T. NAMEY, Plaintiff,**

v.

**Edward REILLY, Chairman, U.S. Parole Commission, David Lopez, Commissioner, U.S. Parole Commission, Kathleen Pinner, William Tenney, and Richard Lindsay, Hearing Examiners, U.S. Parole Commission, and John D. Perry, U.S. Probation Officer, Defendants.**

**CA No. 93–12568–JLT.**

United States District Court,
D. Massachusetts.

April 24, 1996.

James T. Namey, Plymouth, MA, pro se.

Mary Elizabeth Carmody, United States Attorney's Office, Boston, MA, for defendants.

## MEMORANDUM

TAURO, Chief Judge.

James T. Namey brings this *pro se Bivens* action [1] against various officers and hearing examiners of the United States Parole Commission (collectively, "the Parole Commission Defendants") and a federal probation officer, seeking damages for an erroneous sentence imposed by the Parole Commission. Presently before the court is the defendants' motion to dismiss on the ground, *inter alia*, that they are entitled to absolute immunity from any damages resulting from a constitutionally infirm sentence.

## I.

### BACKGROUND [2]

In March 1989, while on federal parole from a sentence imposed in 1975 for bank robbery by assault or use of a deadly weapon, Namey purchased ten glassine bags containing, in total, less than one gram of heroin. Officers from the Boston Police Department Drug Control Unit thereupon arrested Namey for possession of a Class A substance with intent to distribute. On June 13, 1989, Namey pled guilty in Boston Municipal Court to an amended charge of simple possession and received a one year sentence to a state house of correction.

On June 30, 1989, Defendant John D. Perry, a federal probation officer, submitted a parole violation report and warrant request to Defendant Kathleen Pinner, a hearing examiner for the Parole Commission. Perry's report identified three bases for issuing the

---

1. In *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court established a direct cause of action under the Constitution against federal officials for the violation of constitutional rights.

2. In considering a motion to dismiss, a court accepts the alleged facts in the complaint as true, in the light most favorable to the plaintiff. *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir.1988). Particularly where the plaintiff proceeds *pro se*, a complaint is read with "an extra degree of solicitude". *Rodi v. Ventetuolo*, 941 F.2d 22, 23 (1st Cir.1991). It is a well settled rule that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [the] claim which would entitle [the plaintiff] to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Accordingly, in formulating the relevant facts for disposition of this motion, the court looks only to Namey's Amended Complaint and the exhibits attached thereto.

warrant: (1) that Namey had been convicted of possession of a Class A substance with intent to distribute, (2) that he failed to report for supervision, and (3) that he failed to report his state arrest. In light of Namey's plea to the amended charge of possession, the first ground cited by Perry was clearly incorrect. Perry, however, attached to his report copies of court documents that accurately reflected the disposition of the state prosecution. On the basis of Perry's report, the Parole Commission issued a warrant to the United States Marshalls office.

When Namey completed his state sentence in November 1990, he was released to the custody of the United States Marshalls. On February 12, 1991, Namey appeared before the Parole Commission for a parole revocation hearing, which was conducted by Defendants William Tenney, Richard Lindsay, and Pinner. At the hearing, Namey, represented by counsel, explained that he only pled guilty to possession and that his conduct could not warrant an inference that he intended to distribute. Notwithstanding this contention, the hearing examiners concluded that Namey had an intent to distribute the heroin. Based on this conclusion, they rated his offense severity as a Category Four, recommending revocation of parole and the maximum sentence of forty-four months. On May 28, 1991 the National Appeals Board affirmed the decision of the hearing examiners.

Subsequently, Namey filed a habeas corpus petition with this court, contending that the Parole Commission's finding that he intended to distribute heroin was without evidentiary support. The court agreed and, on July 20, 1992, ordered that Namey's sentence be adjusted in accordance with what should

have been the appropriate guideline range, twelve to sixteen months. On August 4, 1992, the Parole Commission released Namey on parole. Notwithstanding the significant reduction this release represented from the original forty-four months' sentence imposed by the Parole Commission, Namey contends that it resulted in his serving a sentence twenty-five months beyond his proper release date.[3]

On November 30, 1993, Namey filed this *Bivens* action against Edward Reilly, the Chairman of the Parole Commission, David Lopez, the Commissioner of the Parole Commission, Pinner, Tenney, Lindsay, and Perry. Liberally construed, Namey's amended complaint alleges that the Parole Commission Defendants knowingly, recklessly, or negligently relied on the incorrect information in Perry's report in concluding that Namey intended to distribute heroin, and that Perry knowingly, recklessly, or negligently supplied false information to the Parole Commission for use at the revocation hearing.[4] Namey seeks compensatory and punitive damages against each of the defendants in their individual capacity, and declaratory relief against the Parole Commission.[5] In the instant motion, the defendants contend that they possess absolute immunity from damages for Namey's claims.

## II.

### DISCUSSION

The common law doctrine of judicial immunity grants judges absolute immunity for damages resulting from actions undertaken in their official judicial capacity. *Stump v. Sparkman*, 435 U.S. 349, 355–56, 98 S.Ct.

---

3. Namey does not explain how he arrives at this figure. Given that Namey only spent twenty-one months in federal custody after his release by state authorities, his estimation appears arithmetically incredible. Nonetheless, for the purposes of this motion, the court will assume that Namey served an excessive period of time for his parole violation.

4. Namey identifies the First, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution as potential sources for bringing a *Bivens* action on these facts. In light of the court's conclusion below that the defendants are entitled to absolute immunity, it will not tarry

over the question of the proper constitutional hook for Namey's action, nor over the question, posed by the defendants, whether Congress has provided a sufficient remedial scheme to correct errors in the parole revocation process to preclude the creation of a *Bivens* implied-right-of-action in these circumstances.

5. In his opposition to the motion to dismiss, Namey rightly concedes that the defendants, in their official capacity, cannot be sued for damages. *See Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974).

1099, 1104–05, 55 L.Ed.2d 331 (1978). As the Supreme Court has explained, providing judges with immunity preserves the integrity of the legal process by allowing them to "be free to act upon [their] own convictions, without apprehension of personal consequence to [themselves]." *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347, 20 L.Ed. 646 (1871). Immunity also "protects judges from vexatious actions prosecuted by disgruntled litigants." *Forrester v. White*, 484 U.S. 219, 225, 108 S.Ct. 538, 543, 98 L.Ed.2d 555 (1988).

Federal courts have extended absolute immunity to certain other officials "closely associated with the judicial process." *Cleavinger v. Saxner*, 474 U.S. 193, 200, 106 S.Ct. 496, 500, 88 L.Ed.2d 507 (1985). In determining whether immunity reaches the actions of an official, courts examine the function performed by the official, not his rank or status. *Buckley v. Fitzsimmons*, 509 U.S. 259, 268, 113 S.Ct. 2606, 2613, 125 L.Ed.2d 209 (1993); *Cleavinger*, 474 U.S. at 200–01, 106 S.Ct. at 500–01. Under this functional view, immunity has been extended to officials performing discretionary tasks that assist judges in the decision-making process, *compare Briscoe v. LaHue*, 460 U.S. 325, 335–36, 103 S.Ct. 1108, 1115–16, 75 L.Ed.2d 96 (1983) (witnesses, including police officers, are immune for their testimony in judicial proceedings) *and Imbler v. Pachtman*, 424 U.S. 409, 424–27, 96 S.Ct. 984, 992–93, 47 L.Ed.2d 128 (1976) (granting prosecutors absolute immunity with respect to initiating and pursuing a criminal prosecution), *with Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 436, 113 S.Ct. 2167, 2172, 124 L.Ed.2d 391 (1993) (court reporters are not absolutely immune for failure to produce a transcript of a federal criminal trial), as well as to officials engaging in tasks closely analagous to those of a judge. *See, e.g., Butz v.*

*Economou*, 438 U.S. 478, 513, 98 S.Ct. 2894, 2914, 57 L.Ed.2d 895 (1978) (federal hearing examiner immune from suit). The issue posed by this case is whether the defendants' acts are "closely associated with the judicial process" such that they are entitled to absolute immunity.

### A. *The Parole Commission Defendants*

With respect to the Parole Commission Defendants, the judicial nature of their conduct is manifest. Federal courts are in accord that parole board members enjoy absolute immunity from civil liability when performing their quasi-judicial functions. *Johnson v. Rhode Island Parole Board Members*, 815 F.2d 5, 8 (1st Cir.1987). *See also Walrath v. United States*, 35 F.3d 277, 281 (7th Cir.1994); *Russ v. Uppah*, 972 F.2d 300, 303 (10th Cir.1992). Indeed, the First Circuit has suggested that the scope of that immunity "encompass[es] all actions taken by parole board members in the course of their official duties, whether or not those actions may be classified as adjudicatory or administrative." *Johnson*, 815 F.2d at 7. *But see Forrester*, 484 U.S. at 229, 108 S.Ct. at 545 (state court judge does not have immunity with respect to hiring and firing probation personnel). Because imposition of a sentence for a parole violation plainly falls within the adjudicatory function of the Parole Commission Defendants' duties, the court concludes that Namey's claims against the Parole Commission Defendants should be dismissed.[6]

### B. *Officer Perry*

With respect to Perry's assertion of absolute immunity, the question is whether a probation officer is absolutely immune from liability for information that is used by a quasi-judicial body to render a decision.[7]

6. In light of this conclusion, the court declines to reach the merits of Tenney and Lindsey's motion for dismissal under Fed.R.Civ.P. 12(b)(5).

7. Though the documentary record suggests that Perry prepared his report to secure a warrant, Namey does not maintain that Perry is liable for providing false information that resulted in an unreasonable seizure of his person. Nor, had Namey asserted such a claim, would he have been successful in light of the other accurate

information in Perry's report rendering the seizure reasonable. Rather, Namey's claim against Perry is limited to the alleged use of the report by the Parole Commission in determining his sentence. While there is evidence in the documentary record suggesting that the Parole Commission did not rely on Perry's report, the court will accept Namey's averment at face value and treat the report as if it was prepared to assist the Parole Commission at the revocation hearing.

This is an issue of first impression for this court.

The Eighth Circuit recently addressed a similar issue in *Anton v. Getty*, 78 F.3d 393 (8th Cir.1996). In *Anton*, a federal parolee brought a *Bivens* action against probation officers, contending that they violated his constitutional rights by "concluding that his release plan was unacceptable and recommending that his parole be delayed." *Id.* at 396. The Eighth Circuit found that the information and recommendations provided by probation officers to the parole hearing examiners play a significant part in the decision-making process. *Id.* The court, thus, concluded that in preparing materials for the Parole Commission, probation officers are entitled to immunity.[8] *Id.*

This conclusion is supported by cases relating to the preparation of presentence reports by probation officers for criminal sentencing proceedings. The federal circuit courts addressing this issue have unanimously held that probation officers are absolutely immune from damages for false statements contained in presentence reports. *Turner v. Barry*, 856 F.2d 1539, 1540–41 (D.C.Cir.

1988); *Dorman v. Higgins*, 821 F.2d 133, 137–38 (2nd Cir.1987); *Tripati v. United States Immigration and Naturalization Service*, 784 F.2d 345, 347–48 (10th Cir.1986), *cert. denied*, 484 U.S. 1028, 108 S.Ct. 755, 98 L.Ed.2d 767 (1988); *Demoran v. Witt*, 781 F.2d 155, 157–58 (9th Cir.1985); *Hughes v. Chesser*, 731 F.2d 1489, 1490 (11th Cir.1984); *Spaulding v. Nielsen*, 599 F.2d 728 (5th Cir. 1979). As in *Anton*, these courts have reasoned that in preparing a presentence report, a probation officer performs an act inextricably intertwined with the court's task of sentencing a criminal defendant.

The court finds the reasoning of these cases persuasive. Whether preparing sentencing materials for the district court or the parole commission, a federal probation officer engages in a role closely associated with the discretionary function of the decision-maker.[9] The similarity between the two roles is highlighted by elimination of the federal parole system under the Sentencing Reform Act. The Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, tit. II, 98 Stat.1976, as amended. Federal pro-

---

**8.** In reaching this conclusion, the court distinguished *Ray v. Pickett*, 734 F.2d 370 (8th Cir. 1984). In *Ray*, the court held that that a probation officer was not absolutely immune for damages resulting from an arrest caused by a false parole violator's warrant. *Id.* at 373–74. This comports with the Third Circuit's decision in *Wilson v. Rackmill*, 878 F.2d 772, 775–76 (3rd Cir.1989), holding that probation officers had absolute immunity for their adjudicative, but not investigative activities. Similarly, courts have found that probation officers are not entitled to absolute immunity in investigating and apprehending probation violators. *See, e.g., Johnson*, 815 F.2d at 8 (stating in dictum that parole officers not entitled to absolute immunity when functioning as arresting officers). *See also Crooker v. Metallo*, 5 F.3d 583, 585 (1st Cir.1993) (parole officer received qualified immunity with respect to claim of unreasonable search); *Galvan v. Garmon*, 710 F.2d 214, 215 (5th Cir.1983) (per curiam) (state probation officer not entitled to absolute immunity for causing mistaken arrest of probationer), *cert. denied*, 466 U.S. 949, 104 S.Ct. 2150, 80 L.Ed.2d 536 (1984); *Wolfel v. Sanborn*, 691 F.2d 270, 271–72 (6th Cir.1982) (per curiam) (parole officers entitled to qualified immunity with respect to arrest of parolee), *cert. denied*, 459 U.S. 1115, 103 S.Ct. 751, 74 L.Ed.2d 969 (1983).

**9.** The court has located only one federal circuit court case suggesting a different conclusion.

*Russ v. Uppah*, 972 F.2d 300 (10th Cir.1992). In *Russ*, a parole officer recommended at his parole board hearing that the plaintiff's parole be revoked. *Id.* at 302. The plaintiff alleged that the parole officer made this recommendation despite his knowledge that the basis for the revocation was false. *Id.* The Tenth Circuit summarily concluded that "decisions involving the revocation of probation or parole by a probation or parole officer warrant only qualified, not absolute, immunity," relying on dictum in an earlier Tenth Circuit opinion. *Id.* at 303 (quoting *Snell v. Tunnell*, 920 F.2d 673, 692 n. 18 (10th Cir. 1990), *cert. denied*, 499 U.S. 976, 111 S.Ct. 1622, 113 L.Ed.2d 719 (1991)). The court finds *Russ* unpersuasive for essentially two reasons. First, the cases cited in *Snell* as support for the quoted language involved claims related to the parolee's apprehension and pre-revocation hearing detention. *Snell*, 920 F.2d at 692 n. 18. *See supra* note 8 (discussing cases cited in the *Snell* footnote). The *Snell* dictum, thus, does not support the view that a parole officer is not immune with respect to recommendations made at a parole revocation hearing. Second, because *Russ* does not distinguish between the plaintiff's claims against the parole officer relating to his prehearing seizure and his post-hearing sentence, it is not clear whether one or both of these claims are addressed in it's holding.

bation and supervised release revocation hearings are now conducted before federal district courts, where probation officers may be called upon to supply the court with essential information relating to the proper penalty. *See* 18 U.S.C.A. § 3603 (West Supp.1996) (duties of probation officers include keeping records concerning probationers or persons on supervised release for the court, keeping the court updated with their progress, as well as any other duty that the court may designate). Accordingly, the court concludes that Perry is absolutely immune from any damages resulting to Namey as a consequence of the Parole Commission's reliance on his report.

### CONCLUSION

For the reasons discussed above, the court concludes that the defendants' motion to dismiss should be ALLOWED.[10] The court issued an order to this effect on March 28, 1996.

---

10. Though Namey also seeks declaratory relief, his claim is moot. "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Los Angeles County v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642

(1979). This court's decision in Namey's habeas action resolved any interest he had in correction of the erroneous information and he faces no threat of the erroneous information being used in a subsequent parole determination.