Yates v. Cunningham et al.          CV-98-046-B    04/23/99

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**William A. Yates II**

        v.                                Civil No. 98-046-B

**Michael J. Cunningham, et. al.**


**O R D E R**

William Yates brings this civil rights action for injunctive and declaratory relief, as well as monetary damages, under 42 U.S.C. § 1983.  The defendants, the warden and two counselors at the New Hampshire State Prison, have moved to dismiss Yates' complaint pursuant to Fed. R. Civ. P. 12(b)(6).  For the reasons set forth below, I grant defendants' motion.


**I.    STANDARD**

In reviewing a motion to dismiss based on Fed. R. Civ. P. 12(b)(6), I must accept all well-pleaded facts as true and construe all reasonable allegations in the light most favorable to the plaintiff.  See Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989).  Accordingly, I should grant a

motion to dismiss only if the complaint fails to state a claim for relief under any plausible theory. See id. at 16. I apply these standards to the issues presented here.

## II. **FACTS**

Yates originally filed this action while he was incarcerated in the New Hampshire state prison system. He was paroled in October 1998 and is now serving a consecutive federal sentence elsewhere. He has sued the defendants in their individual and official capacities, alleging deprivations of his civil rights while he was jailed in New Hampshire. Specifically, he claims that the defendants violated the Establishment Clause of the First Amendment to the United States Constitution by conditioning his early release upon participation in a religiously-based alcohol treatment program.

In November 1996, after serving three years of his 5- to 10-year sentence for retaining stolen property, Yates filed a motion to suspend his sentence pursuant to N.H. Rev. Stat. Ann. § 651:20 in Merrimack County Superior Court.[1] The court ordered defendant

---

[1] "Any person sentenced to state prison shall not bring a petition to suspend sentence until such person has served at least 4 years or 2/3 of his minimum sentence, whichever is greater, and not more frequently than every 3 years thereafter." N.H. Rev. Stat. Ann. § 651:20(I)(a) (West 1996). The statute

Cunningham, the warden of the New Hampshire State Prison, to prepare a report in conjunction with Yates' motion for purposes of deciding whether to modify Yates' sentence. Cunningham's report, dated December 13, 1996, stated that "Mr. Yates has done minimal programming and otherwise has an undistinguished record."

Yates objected to Cunningham's report, advising the court that he had, in fact, participated in alcohol rehabilitation through the Rational Recovery program. The court ordered Cunningham to produce an updated report "which clarifies whether the Warden has taken into account all programs which defendant has completed." Cunningham responded in a report dated June 13, 1997, which stated "See my 12/13/1996 recommendation to the Court, which remains current."

In October 1997, the court again ordered Cunningham to produce a background report on Yates, similar to a presentence investigation report. The court noted that Cunningham was to make a recommendation on Yates' motion, complete with his reasons for making that recommendation.

------

further provides that "As a condition of any suspension of sentence, the court may include restitution to the victim . . .; performance of uncompensated public service . . .; or such other conditions as the court may determine." N.H. Rev. Stat. Ann. § 651:20(III) (West Supp. 1998).

Pursuant to the court's request, Yates was interviewed by defendant Wayne Brock, a mental health counselor at the New Hampshire State Prison. Yates discussed Rational Recovery with Brock, providing Brock with materials on the program. Yates also provided Brock with copies of court decisions finding that forced attendance at Alcoholics Anonymous ("AA") constituted a violation of the Establishment Clause as AA is religious in nature.[2] Brock stated that, if Yates continued to participate in Rational Recovery, he would recommend that Yates "go to Club Fed." Yates

_____

[2] The Establishment Clause of the First Amendment to the United States Constitution bars Congress from making any "law respecting an establishment of religion." U.S. Const. amend. I. The provisions of the First Amendment are made applicable to the states through the Fourteenth Amendment. Several federal and state courts have held that required attendance at AA or AA-based programs violates the Establishment Clause of the First Amendment due to the program's religious content. See, e.g. Warner v. Orange County Dept. of Probation, 115 F.3d 1068, 1076-77 (2d Cir. 1996)(forced attendance at AA meetings as condition of probation violated Establishment Clause); Kerr v. Farrey, 95 F.3d 472, 479-80 (7th Cir. 1996)(conditioning prisoners' risk status and parole eligibility on participation in Narcotics Anonymous violated Establishment Clause); Arnold v. Tennessee Board of Paroles, 956 S.W.2d 478, 484 (Tenn. 1997)(where treatment program is religious and is the only treatment program available, forced participation and consideration of attendance or non-attendance in parole decisions violates Establishment Clause); Griffin v Coughlin, 88 N.Y.2d 674, 691-92 (N.Y. 1996)(mandated rehabilitation programs at prison which incorporate AA principles violate Establishment Clause), cert. denied, 117 S. Ct. 681 (1997). Because I dispose of Yates' claims on grounds of absolute immunity, I do not reach the question of whether or not conditioning a state prisoner's sentence suspension on attendance at AA-based programs constitutes a violation of the Establishment Clause.

apparently understood Brock's comment to mean that he would recommend a sentence suspension so that Yates could leave the state prison and begin serving his federal sentence. Brock's subsequent report to the warden, however, disregarded Yates' participation in Rational Recovery and recommended instead that Yates complete the Summit House program as a condition of early release. Summit House is based upon the principles of AA. The report also contained several inaccuracies. Yates wrote to Brock, pointing out the inaccuracies, reiterating his position on the benefits of Rational Recovery, and objecting to the religious nature of AA-based programs.

Warden Cunningham reviewed Brock's report and recommended that the court deny Yates' motion for a sentence suspension. The court did so in an order dated November 10, 1997:

> The Court has received and reviewed the report and warden's synopsis ordered by the Court on October 8, 1997, and is satisfied that defendants' record does not warrant a sentence modification. . . . Regardless of the merits of the Rational Recovery Program, defendant must complete Summit House before the Court will consider any modification of defendants' sentence.

State of New Hampshire v. Yates, No. 93-S-787-792 (Merrimack Cty. Sup. Ct. Nov. 10, 1997)(McGuire, J.).[3]

---

[3] In fact, Yates was ineligible for the reduced-custody Summit House program because he was to begin serving his consecutive federal sentence upon release from the state prison.

-5-

Yates also discussed his concerns about attending AA-based programs with defendant Kathleen Reaves, another counselor at the New Hampshire state prison. Reaves told Yates that he must attend AA programs in order to be considered for a sentence suspension or parole. Yates provided Reaves with documentation regarding the legality of forced attendance at AA-based programs, as well as documentation on his participation in Rational Recovery. Yates alleges that Reaves not only stood by her recommendation that he attend AA-based programs, but also refused to inform the warden about Yates' participation and apparent success in Rational Recovery.[4]

Warden Cunningham also received several letters from Jack Trimpey, the founder and president of Rational Recovery, which detailed the case law holding that coerced participation in AA-based programs is unconstitutional. Copies of those letters were

---

See Pl.'s Aff. at 5 n. 12, and annexed exhibits 10, 11, 15. Defendant Cunningham stated that he withdrew the Summit House recommendation upon learning that Yates was ineligible. See id. at Ex. 11 (May 15, 1998, letter to the Court withdrawing Summit House recommendation); Ex. 15 (Cunningham Aff. at ¶3).

[4] Yates participated in Rational Recovery beginning in 1994 and taught Rational Recovery classes while an inmate in the Maine Correctional Center from 1995-96. Yates' urinalysis tests while incarcerated in New Hampshire were negative, which he claims is due to his commitment to the Rational Recovery program.

provided to Defendants Reaves and Brock.  The warden also received a memorandum from a Department of Corrections psychologist, which supported Yates' assertion that Rational Recovery is a viable alternative to AA-based programs such as Summit House.

Yates alleges that the Defendants' actions violated the Establishment Clause of the First Amendment to the Constitution. As a result of defendants' violations, Yates alleges that he was wrongly incarcerated in the New Hampshire state prison system from January 1997, the date on which he was first eligible for a sentence suspension, until October 1998, when he was released on parole.

Yates seeks injunctive relief, in the form of an order barring defendants from conditioning early release or parole on a prisoner's attendance at AA-based programs, and forcing defendants to recognize Rational Recovery as a viable alternative to AA-based programs.  He also seeks an injunction ordering defendants to prepare and submit to the Merrimack Superior Court another report reflecting Yates' Rational Recovery participation, lack of disciplinary reports, negative urinalysis testings, and to remove all recommendations regarding Summit House or other AA-based programs as a condition of sentence suspension or parole

eligibility.  Further, Yates seeks a declaration from this Court that forcing prisoners to attend AA-based programs for any reason at all violates the Establishment Clause because those programs are unequivocally religious.  Finally, pursuant to 42 U.S.C. § 1983,[5] Yates seeks compensatory damages for the defendants' alleged violations of his constitutional rights.

## III.  DISCUSSION

Defendants argue that Yates' claims for injunctive and declaratory relief are moot and must be dismissed.  His claim for damages should be dismissed, they argue, because defendants are entitled to qualified immunity.  I agree that Yates' claims for injunctive and declaratory relief are moot.  Similarly, I find that Yates' claim for damages should be dismissed, but not for the reason argued by defendants.  Instead, as discussed more fully below, Yates' claim for damages is barred by the doctrine of absolute immunity.

---

[5] "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the district of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."  42 U.S.C. § 1983 (West 1994).

Yates was granted parole from the New Hampshire state prison system in October 1998, the earliest date on which he was eligible. Thus, his claims for injunctive relief are necessarily moot, as the injunctive relief he originally sought has essentially been granted. See Arizonans for Official English v. Arizona, 520 U.S. 43, 45 (1997)("to qualify as a case fit for federal-court adjudication, an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed"). Indeed, Yates concedes as much in his memorandum of law.

Yates argues that, despite his parole and early release from prison, his claims for declaratory relief survive. I disagree. In light of the fact that I find his damages claim barred by the defendants' absolute immunity, I also find that his claim for declaratory relief is moot. See, e.g. Knight v. Mills, 836 F.2d 659, 670-71 (1st Cir. 1987)(claim for declaratory relief rendered moot where defendants were entitled to qualified immunity from civil damages); Ferreira v. Dubois, 963 F. Supp. 1244, 1262-63 (D. Mass. 1996)(claim for declaratory relief rendered moot where defendants were entitled to qualified immunity and plaintiff had since been released from prison).

Assuming without deciding that forced attendance at AA-based programs, such as Summit House, violates the Establishment Clause, I must still dismiss Yates' claim for damages on grounds of absolute immunity. See, e.g. Briscoe v. LaHue, 460 U.S. 325 (1983); Imbler v. Pachtman, 424 U.S. 409 (1976). Yates essentially takes issue with the contents of Defendants' reports and recommendations submitted to the Merrimack County Superior Court. The defendants were ordered by the Court to prepare and submit those reports in conjunction with Yates' motion for a sentence suspension.

The doctrine of absolute immunity is "based on the policy of protecting the judicial process." Briscoe, 460 U.S. 325, 334-35 (1983)(quoting Imbler, 424 U.S. at 439). The focus of the absolute immunity inquiry is not on the status of the actor, but the nature of the judicial proceeding and the actor's function within that proceeding. See Briscoe, 460 U.S. at 334; see also Cleavinger v. Saxner, 474 U.S. 193, 201 (1985). Subjecting public actors to § 1983 liability for their participation in judicial proceedings could, in some cases, "undermine not only their contribution to the judicial process but also the effective performance of their other public duties." Briscoe, 460 U.S. at 343.

Thus, judges, prosecutors, grand jurors, and witnesses, including police officers, are absolutely immune from liability for their judicial acts and testimony. See Cleavinger, 474 U.S. at 200. The absolute immunity protection has also been extended to probation department employees, see Hili v. Sciarrotta, 140 F.3d 210, 213 (2nd Cir. 1998), court-appointed psychologists, see Morstad v. Department of Corrections and Rehabilitation, 147 F.3d 741, 744 (8th Cir. 1998), and family service workers, see Salyer v. Patrick, 874 F.2d 374, 378 (6th Cir. 1989), who have been sued because of information or recommendations they have provided to a court to assist it in its judicial functions.

It is indisputable that had defendants provided their recommendations to the court through sworn testimony, they would have been entitled to claim absolute immunity because they would have been sued based on statements they made as witnesses. See Briscoe, 460 U.S. at 345. That they instead provided their recommendations through unsworn statements made in response to a court order is of no consequence. Where the testimony and evaluative reports of such public officers are a necessary or helpful component of a judicial proceeding, they are entitled to protection regardless of whether the officers actually took the witness stand and testified. See Morstad, 147 F.3d at 744; Hill,

140 F.3d at 213; see also Namey v. Reilly, 926 F. Supp. 5, 8 (D. Mass. 1996)(immunity is extended to "officials performing discretionary tasks that assist judges in the decision-making process"). This is especially true where, as here, the public officer acted not on his own, but pursuant to a court order. See Morstad, 147 F.3d at 744; see also Mays v. Sudderth, 97 F.3d 107, 113 (5th Cir. 1996)(sheriff absolutely immune from damages claim arising from arrest of plaintiff in compliance with facially valid court order). Thus, I find that the defendants are absolutely immune from damages under § 1983 for preparing and submitting reports and recommendations in connection with Yates' motion, as they were directed to do so by the Merrimack County Superior Court. The defendants' actions were "inextricably intertwined with the court's task" of ruling on Yates' motion and, as such, are entitled to absolute immunity. See Namey, 926 F. Supp. at 9.

## IV. CONCLUSION

Based on the foregoing analysis, I grant defendants' motion to dismiss (document no. 27) and dismiss plaintiff's complaint (document no. 25).

-12-

SO ORDERED.

                                        _____
                                        Paul Barbadoro
                                        Chief Judge
April 23, 1999

cc:  Alex Smith, Esq.
     Robert N. Isseks, Esq.
     Suzanne M. Gorman, Esq.
     Jennifer Brooks Gavilondo, Esq.